IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA M. WATKINS,                Case No. 3:14-cv-01309-AA
                                              OPINION AND ORDER
           Plaintiff,

      v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

           Defendant.
_____

Lisa R.J. Porter
KP Law PC
5200 SW Meadows Rd., Suite 150
Lake Oswego, Oregon 97035
      Attorney for plaintiff

Billy J. Williams
Ronald K. Silver
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Sarah L. Martin
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
      Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff Jessica Watkins brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title XVI supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On October 12, 2010, plaintiff applied for SSI. Tr. 163-72. Her application was denied initially and upon reconsideration. Tr. 118. On August 9, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 65-75. On August 29, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 15-29. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court.

## STATEMENT OF FACTS

Born on September 3, 1976, plaintiff was 8 years old on the alleged onset date of disability and 35 years old at the time of the hearing. Tr. 27, 48, 55, 162. Plaintiff received her GED. Tr. 50, 188. She worked previously as a sales representative, carnival ride operator, and a fast food worker. Tr. 50-53, 186, 189.

Plaintiff alleges disability as of September 3, 1984, due to manic depression, anxiety, bi-polar disorder, high blood pressure, hypothyroidism, type two diabetes, and her inability to regulate her anger and aggressiveness arising from post-traumatic stress disorder ("PTSD"). Tr. 163.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step

five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since the application date. Tr. 20. At step two, the ALJ determined plaintiff has the following severe impairments: diabetes mellitus, obesity, peri-umbilical abdominal hernia, bipolar disorder, anxiety disorder, and borderline personality disorder. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Id.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. Tr. 21. The ALJ resolved that plaintiff possessed the residual capacity ("RFC") to perform less than the full range of light work:

> consisting of lifting and carrying no more than twenty pounds with frequent lifting or carrying of objects weighing up to ten pounds. There are no limitations on [her] ability to sit, stand, or walk. [She] is further limited to no work around hazards such as unprotected height[s] or dangerous machinery. She cannot climb ladders, ropes or scaffolds. She is able to remember, understand, and carry out simple tasks or instructions

typical of occupations of a specific vocational
preparation (SVP) of one or two. She cannot work with the
general public and works best in an environment where she
has only superficial interaction with coworkers, [with] no
work that requires teamwork or close cooperation.

Tr. 22.

At step four, the ALJ determined that plaintiff could not

perform any relevant past work. Tr. 27. At step five, the ALJ found

that plaintiff could perform a significant number of jobs existing

in the national and local economy, despite her impairments, such as

hand packager and food assembler. Tr. 28. Accordingly, the ALJ

concluded that plaintiff was not disabled under the Act. Id.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her not

fully credible; (2) failing to properly assess the testimony of lay

witness Carol Skinner; (3) rejecting medical evidence furnished by

Donna Wicher, Ph.D., P.C.; and (4) failing to account for all of

her impairments in the RFC, such that the step five finding was

invalid.

I.    Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to provide a clear and

convincing reason, supported by substantial evidence, for rejecting

her subjective symptom testimony concerning the severity of her

impairments. When a claimant has medically documented impairments

that could reasonably be expected to produce some degree of the

symptoms complained of, and the record contains no affirmative

evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, when asked why she was unable to work, plaintiff testified: "I blow up, can't concentrate, mind races." Tr. 53. She also stated, "I constantly suffer from PSD [Posttraumatic Stress Disorder] ... It's hard to function through a normal day because these thoughts come up and I don't know how to deal with them." Id. Plaintiff reported engaging in limited household chores, such as dressing and cooking simple meals. Tr. 58. When asked what she does on a typical day, plaintiff responded that she wakes up, cooks food, makes plans for completing household

Page 7 - OPINION AND ORDER

chores, but forgets to do them because her mind is "racing 20 times a minute and the house is a mess." Id.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements regarding the extent of these symptoms were not fully credible due to her inconsistent statements, activities of daily living, and history of improvement with treatment. Tr. 25.

Notably, the ALJ found that plaintiff was inconsistent in her reports of why she stopped working. Tr. 23-24. Discrepancies in the testimony of a claimant can serve as clear and convincing reasons for discrediting that testimony. Burch, 400 F.3d at 676, 680. The ALJ may also draw an adverse credibility inference where the claimant stops working for reasons unrelated to his or her alleged disability. Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Substantial evidence supports the ALJ's conclusion in the case at bar. During a July 2010 comprehensive mental health assessment by the Native American Rehabilitation Association, plaintiff reported that before she went to prison, she had been "doing well & had a job." Tr. 25, 650. When she initially applied for benefits, plaintiff informed the Social Security Administration that she stopped working "because of other reasons" and because she "moved out of the state." Tr. 187. By contrast, at the ALJ hearing, plaintiff remarked she stopped working because she was disabled and

that she had been fired from every job she ever had. Tr. 52-53. In sum, plaintiff's statements that she was "doing well" before prison and was no longer working in 2005 because of a cross-country move, contradict her hearing testimony that her impairments became disabling in 1984. Tr. 187. As the ALJ reasonably concluded, these conflicting statements undermine plaintiff's credibility.[1]

Furthermore, the ALJ found that the severity of plaintiff's alleged symptoms was not supported by the objective mental health evidence. The treatment a claimant uses to alleviate symptoms is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). Not seeking "an aggressive treatment program" permits the inference that the claimant's symptoms were not as "all-disabling" as reported. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Although an ALJ may not rely solely on a lack of medical evidence to discredit a claimant, it is one factor that may be considered, among others. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)(citing 20 C.F.R. § 404.1529(c)(2)). The ALJ observed that, despite reporting severe health symptoms, the records from

---

[1] Although not cited by the ALJ, the court notes that plaintiff's testimony concerning the length of her past employment is also inconsistent. In her brief, plaintiff argues that her work history reports prove that she has never held a job for more than four months. Pl.'s Opening Br. 22. Yet, at the ALJ hearing, plaintiff stated that she never worked more than a month. Tr. 52. Later at the ALJ hearing, she testified, "I've only held a job eight months." Tr. 55.

plaintiff's primary physician consistently revealed no psychiatric symptoms and stability with treatment. See, e.g., Tr. 682 ("Effexor has worked well for her"), 683 ("[n]o depression or anxiety"), (712-713) ("[n]o depression or anxiety ... stable on meds. continue current dosing"), 737 ("[s]he has a normal mood and affect [and] [h]er behavior is normal"). Louis Drakos, M.D., noted no evidence of any psychomotor retardation and that plaintiff's behavior "was generally appropriate and cooperative with adequate impulse control." Tr. 639. Further, the record reflects that plaintiff has denied hallucinations or delusions multiple times and, during a comprehensive pyschodiagnostic evaluation, Dr. Wicher observed that plaintiff did not appear to be responding to any internal stiumli. Tr. 701.

Lastly, plaintiff has not sought regular mental health treatment. A claimant may be discredited "if the medical reports or records show that [she] is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7P, available at 1996 WL 374186. In December 2010, Dr. Wicher opined that plaintiff would likely "be more successful at sustaining employment in the future" if she underwent therapy and consistent medication management. Tr. 702. At the ALJ hearing, however, plaintiff testified that she had not obtained any counseling since being released from prison in 2009 because "counseling is just a gossip table to me." Tr. 62-63. While

improved functioning or stability with treatment does not necessarily translate to the ability to maintain gainful employment, it was proper for the ALJ to consider those factors in evaluating plaintiff's credibility. Burch, 400 F.3d at 680.

Thus, the ALJ's credibility finding was reasonable and supported by substantial evidence in the record. The ALJ's credibility assessment is affirmed.

II. Rejection of the Lay Opinion

Plaintiff next contends the ALJ failed to properly assess the lay testimony of her mother, Ms. Skinner. Lay witness observations regarding a claimant's symptoms or functional limitations must be considered by the ALJ. Molina v. Astrue, 674 F.3d 1114 (9th Cir. 2012). The ALJ must provide reasons germane to each witness in order to reject such testimony. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

In a third party function report, Ms. Skinner opined that plaintiff has "perception issues which makes her feel persecuted and resentful." Tr. 212.  Under a section where third parties provide information about the plaintiff's abilities, Ms. Skinner wrote that plaintiff has told her that "it is always someone else's fault" whenever she is terminated from employment.  Tr. 217. Ms. Skinner concluded that plaintiff "lacks the mental maturity necessary to make it on her own," and in regards to their relationship, she hopes to be around "a long time to be of

assistance" to plaintiff. Tr. 219.

The ALJ found that Ms. Skinner's testimony was contradicted by medical evidence, specifically the evidence reflecting that plaintiff was able to work before prison. Tr. 24. Inconsistency with the medical evidence is a germane reason to reject third-party statements. Apfel, 236 F.3d at 503, 511. Additionally, the ALJ found that Ms. Skinner's opinion was conclusory, lacked expertise relating to plaintiff's impairments, and was potentially sympathetic or biased due to their personal relationship. Id.

Even assuming, however, that the ALJ erred in this regard, such error was harmless. See Molina, 674 F.3d at 1114-1122 ("an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witnesses's claims")(citation and internal quotations omitted). Ms. Skinner's testimony regarding the extent of plaintiff's functional limitations were not substantially different, and certainly not greater, than plaintiff's allegations. Compare Tr. 46-66 (plaintiff's hearing testimony) with Tr. 212-219 (Ms. Skinner's written testimony). As discussed above, the ALJ provided clear and convincing reasons to reject the plaintiff's credibility, and these reasons are equally applicable to Ms. Skinner's testimony. The ALJ's decision is affirmed as to this issue.

III. Medical Opinion Evidence

Plaintiff asserts that the ALJ failed to provide a legally sufficient reason, supported by substantial evidence, to reject the opinion of Dr. Wicher regarding plaintiff's activities of daily living and social limitations. Pl.'s Br. 25. There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In resolving ambiguities in the medical record, an ALJ may reject the uncontradicted opinion of a treating doctor by providing clear and convincing reasons, supported by substantial evidence; the contradicted opinion of a treating doctor may be rejected by providing specific and legitimate reasons that are supported by substantial evidence. Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007). When evaluating medical opinions, an ALJ is not required to accept an opinion that is brief, conclusory, and inadequately supported by objective findings. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

In December 2010, Dr. Wicher completed a comprehensive pyschodiagnostic evaluation of plaintiff. Tr. 697-702. Based on a clinical interview, Dr. Wicher diagnosed plaintiff with antisocial personality disorder and borderline personality disorder, and observed symptoms which may support a diagnosis of panic disorder. Tr. 701. Dr. Wicher reported that plaintiff appeared to have moderate deficits in social functioning, "based on her difficulty

controlling anger, history of aggression toward others, and current social insolation." Tr. 702. Dr. Wicher noted that plaintiff's affect, "which was fairly bright," was also "inconsistent with her description of her activities of daily living and other symptoms of depression." Id. Additionally, Dr. Wicher reasoned that plaintiff's description of mood swings and difficulty controlling her anger were symptoms better accounted for by her underlying personality structure, characterized by antisocial personality disorder and borderline personality disorder. Id. Although plaintiff's self-reports raised the question of whether she may suffer from major depressive disorder, Dr. Wicher ultimately concluded that plaintiff did not report sufficient symptoms during the evaluation to support that diagnosis. Id. Dr. Wicher found that, despite being diagnosed with bipolar disorder since the age of eight, plaintiff's records did not clearly "report a history which is conclusive for [bipolar disorder]." Id.

According to Dr. Wicher, plaintiff's deficit in concentration, persistence, and pace was moderate, although her pace was not obviously impaired and her persistence "appeared to be limited by a tendency to give up quickly." Id. With regard to plaintiff's mental evaluation, Dr. Wicher noted that, because of the inconsistent mental status test results, determining whether plaintiff put forth satisfactory effort was difficult. Tr. 700-702. Finally, Dr. Wicher reported that plaintiff's self-described

moderate deficits in social functioning were the primary psychological barriers to her returning to full-time, sustained employment. Tr. 702.

The ALJ gave some weight to Dr. Wicher's testimony. Tr. 26. Specifically, the ALJ found that Dr. Wicher's opinion did not suggest plaintiff would be incapable of performing the determined residual functional capacity. To the extent that the ALJ rejected Dr. Wicher's opinion, she did so because Dr. Wicher had concerns about plaintiff's effort during the exam and because Dr. Wicher noted that plaintiff's affect was inconsistent with her own descriptions of daily living. Tr. 26, 702. An ALJ may afford less weight to a treating physician's opinion that is inconsistent with the claimant's activities of daily living or based on the claimant's uncredible subjective symptom statements. Rollins, 261 F.3d at 853, 856; Tommasetti, 533 F.3d at 1035, 1041.

Dr. Wicher clearly noted her assessment of plaintiff's ability to perform activities of daily living was premised on plaintiff's uncredible self-reports. Although Dr. Wicher noted that plaintiff's description of daily living was inconsistent with her affect during the exam, Dr. Wicher nevertheless based that portion of her opinion on plaintiff's subjective complaints. Tr. 700-702. In sum, because Dr. Wicher's opinion was inconsistent with other evidence of record, including portions of her own assessment, the ALJ provided specific and legitimate reasons, supported by substantial evidence,

Page 15 - OPINION AND ORDER

for affording less weight to Dr. Wicher's opinion.

Additionally, the ALJ reasonably resolved that restricting plaintiff to simple work with occasional contact with supervisors, no contact with the general public, and only superficial contact with co-workers was sufficient to account for Dr. Wicher's opinion regarding plaintiff's moderate deficits in social functioning. This is particularly true due to the fact that "unskilled jobs ordinarily involve dealing primarily with objects." SSR 85-15, available at 1985 WL 56857. The ALJ correctly concluded that "the objective medical evidence does not provide a basis for finding limitations greater than those determined." TR. 26. The ALJ's assessment of the medical opinion evidence is affirmed.

IV. Residual Functional Capacity Determination

Plaintiff asserts that the ALJ erred in formulating her RFC, and, by extension, at step five, failing to account for all of the limitations identified in her testimony, the lay witness testimony, and Dr. Wicher's report. As discussed above, the ALJ properly evaluated this evidence. Further, outside of plaintiff's self reports, there is no indication that she suffers from anger outbursts that would interfere with her ability to work, especially in light of the fact that the ALJ limited her to occupations involving no public contact and limited coworker contact. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the issues above, is without

merit. <u>Bayliss,</u> 427 F.3d 1211 at 1217-18. Further, the Court notes that unskilled jobs, like those identified by the VE in response to the dispositive hypothetical given by the ALJ, primarily involve [working] with objects rather than people. <u>Weber v. Astrue</u>, 2012 WL 566564, *3 (D.Or. Feb. 21, 2012) (citations omitted). The ALJ's RFC and step five finding are affirmed.

### CONCLUSION

For the reasons set forth above, the decision of the Commissioner is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this **17** day of June 2015.

_____

Ann Aiken
United States District Judge